**IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No.: 3:22CR121 |
| | ) | |
| | ) | |
| **JULIO CESAR ALVARADO DUBON,** | ) | |
|     Defendant. | | |

**DEFENDANT'S MOTION TO SUPPRES AND
INCORPORATED MEMORANDUM OF LAW**

COMES NOW, the defendant, Julio Cesar Alvarado Dubon, by and through counsel, Jose E. Aponte, Esquire, and asserts that police executed a search of his residence in violation of the Fourth Amendment of the United States Constitution and that, as a result, all evidence obtained from this search should be suppressed. In support of this Motion, the defendant states as follows, reserving the right to amend, modify or supplement this motion at such time as may be appropriate.

**FACTS**

A review of the materials provided in discovery indicates that on or about July 1, 2022, Detective M.P. Kiniry ("Kiniry") and Sgt. B. Rodgers ("Rodgers") of the Special Investigations Division; along with Spanish-speaking Richmond Police Officer Ferrerias ("Ferrerias"), went to a residence located at 3112 Columbia Street in the City of Richmond. Alvarado Dubon_000057 & 66. Kiniry and Rodgers were following up on a police tip about a "mass shooting" that was supposed to occur on July 4th. Alvarado Dubon_000057. The three officers, dressed in tactical

vests, emblazoned with the word "Police" and armed with weapons, attempted a "knock and talk" at the above location.  Alvarado Dubon_000057 & 67.

As the three officers stood on the front porch of the residence, loud music was blaring from the street.  After about 45 seconds of knocking, Julio Cesar Alvarado Dubon ("Dubon") came to the door.  Ferrerias asked Dubon if he could open the door.  Alvarado_Dubon 000079.  After asking if they could come in to talk, Dubon opened the door and allowed the officers into his residence.  After some initial conversation with Dubon and the other occupant of the house, Kiniry says, "Let them know we are going to look around to make sure no one else is here."  Alvarado_Dubon 000082.  At that point Dubon states, "It is my understanding that without a warrant you can't get into my house."  Alvarado_Dubon 000082.  Ferrerias responds immediately saying "We are going to check to make sure there is no one else."  Alvarado_Dubon 000082.  By this time, Kiniry has already begun walking through the house.  Dubon attempts to walk towards his room and is immediately directed back to the living room by Kiniry.  Kiniry's entry into the bedrooms of the house results in the discovery of firearms in Dubon's bedroom.

## Law and Argument

### Introduction

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961). Accordingly, "the Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." Illinois v. Rodriguez,

497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). *See also* Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972)).( "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."); United States v. Cephas, 254 F.3d 488, 494 (4th Cir. 2001)("Warrantless entries into a residence are presumptively unreasonable."). However, two notable exceptions allow warrantless entry of a person's home: (1) the existence of exigent circumstances and (2) a consent to search.

The defendant concedes that law enforcement was free to approach the home and knock on the door in an effort to engage with the residents therein. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, the Fourth Amendment is not implicated when a law enforcement officer approaches a person in a public place to question that person. *See* Florida v. Bostick, 501 U.S. 429, 434-35, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991). More specifically, the Fourth Amendment is not implicated when a law enforcement officer approaches a dwelling to speak with the occupant. See United States v. Cephas, 254 F.3d 488, 493-94 (4th Cir. 2001); United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996); United States v. Bradshaw, 490 F.2d 1097, 1100 (4th Cir. 1974) (officers "were clearly entitled to go onto defendant's premises in order to question him"). As stated in Cephas:

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right of privacy, for any one openly and peaceably … to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant thereof-- whether the questioner be a pollster, a salesman, or an officer of the law.

254 F.3d at 493 (quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964)). The defendant submits that the officers' act of walking through the home "to check for other people" exceeded the bounds of the Fourth Amendment in the absence of a warrant or any exception to the warrant requirement. Accordingly, the defendant respectfully requests that this Honorable Court grant his motion to suppress and exclude any and all evidence seized as a result of this warrantless seizure.

### The officers conducted a "search" by walking through the residence.

The defendant maintains the police conducted a warrantless search of the residence by walking through the home and looking around without consent. A person claiming to have been subjected to an unlawful search must first establish as a threshold matter that she had a legitimate expectation of privacy in the particular area searched. Rakas v. Illinois, 439 U.S. 128, 148-49, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978). An expectation of privacy is legitimate only where "(1) the individual manifests a subjective expectation of privacy in the object of the challenged search; and (2) society is willing to recognize that subjective expectation as reasonable." United States v. Pinson, 24 F.3d 1056, 1058 (8th Cir.) (citing Katz v. United States, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967)), *cert. denied*,    U.S.    , 63 U.S.L.W. 3456 (U.S. Dec. 12, 1994) (No. 94-402). There can be no dispute that the defendant has a legitimate expectation of privacy within his own home and that society recognizes this expectation as reasonable.

A "search" may occur when the government intrudes upon a person's "reasonable expectation of privacy." Katz, 389 U.S. at 361. A search may also occur when the government intrudes or trespasses upon a constitutionally protected area for the purposes of obtaining information. United States v. Jones, 565 U.S. 400, 408 n.5, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012). As detailed above, police approached the defendant's door and knocked repeatedly. The

defendant ultimately opened the door; police asked if they could come inside to talk, presumably because of the loud music playing outside. After a brief conversation, police informed the defendant they were going to check the house to see if other people were present. The defendant stated he believed the police needed to have a warrant in order to enter the residence. At that point, Kiniry has already left the front room and looked in other rooms, returning and stating he had seen a weapon. There is no dispute that the police did not have a warrant to search the home at the time the firearm was located.

### The officers' actions did not constitute a valid protective sweep.

The Supreme Court in Maryland v. Buie endorsed the "protective sweep" as an exception to the warrant requirement. In Buie, the Court held that, *as an incident to arrest*, the Fourth Amendment permits a protective sweep of all or part of a premises when the searching officer at the time of the sweep reasonably believes, based on specific and articulable facts, that the premises contains an individual posing a danger to the officer or others. Maryland v. Buie, 494 U.S. 325, 327-28, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990)("as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched"). The Court compared the protective sweep to a Terry frisk, where the confrontation has not "escalated to the point of arrest," stating that "[a] protective sweep, in contrast, occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime. While stating that a protective sweep would be justified incident to arrest, the Supreme Court went on to state that "beyond that . . . there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual

posing a danger to those on the arrest scene." Buie, 494 U.S. at 334. Such facts do not exist in the instant case.

The defendant was not being arrested by law enforcement at the time they further entered the home to search for other people. Any thought that someone else was in the home was nothing more than a hunch, unsupported by articulable facts. Accordingly, this was not a valid protective sweep.

### The defendant did not consent to the search.

A warrant is always required to conduct a search unless an exception is invoked. *See* Katz v. United States, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). One such exception is when the defendant gives voluntary consent to search. *See* Schneckloth v. Bustamonte, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973). Consent to enter and search a home is valid to support warrantless entry into a home if the government can "demonstrate the consent was, in fact, voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). As in the issue of whether consent was given at all, the determination of whether a consent to search is valid is based upon the "totality of the circumstances." Id. at 227. Some of the factors which may be used in determining whether a consent to search was voluntary include: the consenter's age, education, maturity, intelligence, and experience, as well as the conditions under which the consent to search was given, such as the officer's conduct, the number of officers present, and the duration, location, and time of the encounter. United States v. Elie, 111 F.3d 1135 (4th Cir. 1997)(finding consent to be voluntary where at least six officers were present), *abrogated in part on other grounds by* Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

At no time, prior to walking through the residence, did the defendant consent to any search, nor did the police ever request consent to look through the residence. Allowing the police within the home to talk did not constitute consent to a search of the home. Police simply told the defendant they would look through the residence for other people; when the defendant stated he believed they needed a warrant, police seemingly ignored the defendant and continued to look through the home, ultimately finding incriminating evidence. I

**There were no exigent circumstances justifying further entry into the residence.**

Exigent circumstances permit law enforcement to enter property and/or conduct a warrantless search outside the context of a criminal investigation. United States v. Taylor, 624 F.3d 626, 630-33 (4th Cir. 2010), cert. denied, 565 U.S. 925 (2011). Three broad categories of exigent circumstances serve as an exception to the Fourth Amendment's warrant requirement: (1) the "emergency aid" exception, permitting entry to "render emergency assistance to an injured occupant or to protect an occupant from imminent injury," Kentucky v. King, 563 U.S. 452, 459-62, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011) (citing Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006)); (2) the "hot pursuit" exception, Id. (citing Brigham City, 547, U.S. at 403); and (3) "to prevent the imminent destruction of evidence," Id. (citing Georgia v. Randolph, 547 U.S. 103, 115, n.6, 126 S. Ct. 1515, 164 L. Ed. 2d 208; and Minnesota v. Olson, 495 U.S. 91, 100, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990)). "In analyzing whether exigent circumstances justified a warrantless search, we ask whether the circumstances would cause an officer to have an 'objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within.'" United States v. Hill, 649 F.3d 258, 265 (4th Cir. 2011) (quoting United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992)).

The Fourth Circuit has provided factors relevant to a district court's finding of exigent circumstances: "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) the possibility of danger to police guarding the site, (3) the gravity of the offense involved, and (4) whether the suspect is reasonably believed to be armed." McCarn v. Beach, 91 F.3d 131 (4th Cir. 1996)(citing United States v. Reed, 935 F.2d 641, 642 (4th Cir.), *cert. denied*, 502 U.S. 960 (1991)). *See also* United States v. Turner, 650 F.2d 526 (4th Cir. 1981) (citing United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1973)). McCarn v. Beach, 91 F.3d 131 (4th Cir. 1996) (citing United States v. Reed, 935 F.2d 641, 642 (4th Cir.), *cert. denied*, 502 U.S. 960 (1991)); Leonard v. Starkey, No. 1:14-CV-42, 2017 U.S. Dist. LEXIS 9629, 2017 WL 354850, at *7 (N.D.W. Va. Jan. 24, 2017)(Bailey, J.).

Nothing in the facts provided during discovery suggests that there is an exigency. Police have gotten themselves into the house. If they believe that there is need for a search warrant, they have the ability to freeze the scene and obtain the search warrant. Police have the two occupants of the residence in the living room.

### **The later search warrant does just justify the earlier violation.**

The defendant submits that because the entry into another room within the house constitutes a Fourth Amendment violation, this Honorable Court must "suppress evidence that is the indirect product of the illegal police activity as 'fruit of the poisonous tree.'" United States v. Oscar-Torres, 507 F.3d 224, 227 (4th Cir. 2007) (citing Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

Police entered a portion of the residence to which they were not granted consent to search; the Government can point to no exigency that would justify further entry into the home. The later search warrant to does not justify the earlier constitutional intrusion. Additionally, the

"good faith" exception established in United States v. Leon, 468 U.S. 897 (1984) should not apply. The Leon exception only applies when the officers relied on a search warrant and that search warrant was unsupported by probable cause. In the instant case, the issue is not whether the search warrant was supported by probable cause but rather whether the evidence cited in the search warrant—the firearm in the bedroom—was discovered during an illegal search. The firearm was absolutely located as a result of an illegal search. Accordingly, the Leon exception does not apply.

## Suppression is the appropriate remedy.

A number of recent United States Supreme Court decisions have explained that district courts should not automatically exclude evidence collected pursuant to a defective search. These cases have held that exclusion should be a "last resort"—and only invoked where the deterrent effect on police conduct outweighs the substantial social costs associated with excluding evidence in a criminal trial. *See, e.g.,* Herring v. United States, 555 U.S. 135, 140, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system"); Hudson v. Michigan, 547 U.S. 586, 591, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006) ("Suppression of evidence has always been our last resort . . . applicable only . . . 'where its deterrence benefits outweigh its substantial social costs' " (quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998)); Scott, 524 U.S. at 364-65 ("[O]ur cases have repeatedly emphasized that the rule's 'costly toll' upon truth seeking and law enforcement objectives presents a high obstacle for those urging application of the rule.").

Police action in this case was sufficiently deliberate to warrant suppression. Police entered the defendant's residence for the stated purpose of having a conversation with him. Police then advised the defendant they would be walking through the residence to make sure no one else was present; the defendant stated he believed the police needed a warrant to further enter the home. Police ignored this statement and continued to look through the home, without a warrant, consent, or exigency. Given this evidence, and the fact that warrantless entry into the home is the chief evil against which the Fourth Amendment is intended to protect, suppression is the appropriate remedy.

## Conclusion

In light of the foregoing, Dubon respectfully requests that this Honorable Court grant his motion to suppress and exclude any and all evidence seized by law enforcement from his scheduled trial.

Respectfully submitted,

JULIO CESAR DUBON ALVARADO


By: _____/s/_____
Of Counsel

Jose E. Aponte, Esquire
Attorney for Defendant
Bain Sheldon, PLC
9030 Three Chopt Road
Suite B
Richmond, Virginia 23229
T: (804) 282-8625
F: (804) 282-8629
japonte@bainsheldon.com
VSB:42201

# **CERTIFICATE**

      I certify that on September 12, 2022, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to:

Stephen E. Anthony
Assistant United States Attorney
919 East Main Steet
Suite 1900
Richmond, Virginia 23219
Stephen.E.Anthony@usdoj.gov


                                                    /s/
                                        Jose E. Aponte
                                     Counsel for Defendant